# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OFFICE DEPOT, INC., and<br>NORTH AMERICAN CARD<br>AND COUPON SERVICES, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>THOMAS COOK, in his capacity as the<br>Secretary of Finance for the State of<br>Delaware; DAVID M. GREGOR, in his<br>capacity as the Delaware State Escheator;<br>and MICHELLE M. WHITAKER in her<br>capacity as the Delaware Abandoned<br>Property Audit Manager,<br><br>    Defendants. | C.A. No. 16-609-LPS |

Rudolf E. Hutz, R. Eric Hutz, REED SMITH LLP, Wilmington, DE
Diane Green-Kelly, REED SMITH LLP, Chicago, IL

    Attorneys for Plaintiffs.

Jennifer R. Noel, Caroline Lee Cross, Delaware Department of Justice, Wilmington, DE

    Attorneys for Defendants.

Steven Rosenthal, Tiffany R. Moseley, J.D. Taliaferro, LOEB & LOEB LLP, Washington, DC
Marc S. Cohen, LOEB & LOEB LLP, Los Angeles, CA

    Attorneys for Defendant Thomas Cook.

## MEMORANDUM OPINION

March 3, 2017
Wilmington, Delaware

[signature]

**STARK, U.S. District Judge:**

## I. INTRODUCTION

On July 18, 2016, Plaintiffs Office Depot, Inc. ("Office Depot") and North American Card and Coupon Services, LLC ("NACCS" and, collectively, "Plaintiffs") filed a complaint ("Complaint") against Defendants Thomas Cook ("Cook"), in his capacity as the Secretary of Finance for the State of Delaware; David M. Gregor ("Gregor"), in his capacity as the State Escheator of the State of Delaware; and Michelle M. Whitaker, in her capacity as the Audit Manager for the State of Delaware ("Whitaker" and, collectively, "Defendants"). (D.I. 1) The Complaint alleges that Delaware's Unclaimed Property Law, Del. Code Ann. tit. 12, § 1101 (2016) ("DUPL"), "violates and is preempted by federal common law." (*Id.* ¶¶ 1, 76) It further alleges that Defendants' actions pursuant to the DUPL have violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution. (*See id.* ¶¶ 1, 89)

On October 28, 2016, Defendants filed a motion to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and for failure to state a claim ("Motion"). (D.I. 22) Briefing on Defendants' Motion was completed on December 9, 2016. (D.I. 23, 24, 26)

For the reasons that follow, the Court will grant Defendants' Motion.

## II. BACKGROUND[1]

Escheat is a procedure through which "a sovereign may acquire title to abandoned property if after a number of years no rightful owner appears." *Texas v. New Jersey*, 379 U.S. 674, 675 (1965). Delaware's escheat law authorizes the State Escheator to claim unclaimed

---

[1]This recitation is based, as it must be at this stage, on taking as true all well-pleaded factual allegations in the Complaint.

property and to conduct examinations of companies' books and records. *See generally* Del. Code Ann. tit. 12, § 1155 (2016).

Plaintiff Office Depot is a corporation organized under Delaware law, and Plaintiff NACCS is a limited liability company organized under Virginia law. (*See* D.I. 1 ¶¶ 5-6) Office Depot and NACCS are parties to a Gift Card, Gift Certificate, and Merchandise Credit Agreement, pursuant to which "NACCS appointed Office Depot as an agent . . . to promote and sell NACCS's gift cards, gift certificates, and merchandise credits using trademarks and trade names owned by Office Depot in exchange for a 1% commission." (*Id.* ¶ 36) Office Depot and NACCS are also parties to a Conveyance Agreement, under which NACCS has "acquired the assets and assumed the liabilities of Office Depot's gift card and gift certificate business." (*Id.* ¶ 37)

On February 6, 2013, Defendants began an audit of Office Depot's compliance with Delaware's escheat law. (*See id.* ¶ 39) Using Kelmar Associates, LLC ("Kelmar"), an auditing firm, as their agent, Defendants requested "voluminous detailed financial records" for periods back to 1995 and also requested "copies of unclaimed property reports filed in all states for the entire audit period." (*Id.* ¶¶ 40, 45) Office Depot objected to producing documents that predated the statute of limitations and to producing "copies of unclaimed property filings in states not participating in the examination." (*Id.* ¶¶ 40, 45)

On September 3, 2014, Kelmar asked NACCS to produce "extensive detailed information . . . relat[ing] to NACCS's gift card, gift certificate, and merchandise credit business." (*Id.* ¶ 43) "Plaintiffs responded by producing . . . NACCS's [l]imited [l]iability [a]greement to demonstrate that NACCS" was organized in Virginia and further produced all of NACCS's general ledger

accounts. (*Id.* ¶ 44) On September 15, 2015, Kelmar again requested "voluminous detailed information concerning NACCS's gift cards, gift certificates, and merchandise credits business, . . . irrespective of the card issuer" being Office Depot, NACCS, or any other party. (*Id.* ¶ 49)

Plaintiffs did not produce any documents pursuant to Kelmar's September 15, 2015 request. (*See id.* ¶ 50) Thus, on January 26, 2016, Kelmar sent a letter to Office Depot stating that "Office Depot's continued failure to provide the requested information will result in the Office referring the matter to the Attorney General's Office for consideration of enforcement action." (*Id.* (internal quotation marks omitted))

On February 11, 2016, Defendant Whitaker "sent a letter to Office Depot, listing several other documents that Office Depot had not produced in the examination, including copies of . . . unclaimed property reports filed in other states for . . . years 1995 and forward." (*Id.* ¶ 55) In response, Plaintiffs' counsel sent a letter to Whitaker, arguing that most of the information sought by Defendants "concerns property for which Delaware lacks standing to claim." (*Id.* ¶ 56) Plaintiffs' letter further argued that most of Defendants' requests were barred under the statute of limitations. (*See id.*)

As a consequence of not submitting all of the documents Defendants sought, Plaintiffs received an email from Kelmar on June 24, 2016, notifying Plaintiffs that "th[e] matter had been referred to" the Attorney General's Office. (*Id.* ¶ 57 (internal quotation marks omitted))

Plaintiffs further allege: "The Delaware Attorney General is currently prosecuting a lawsuit against eighty-six defendants, including seventeen Delaware incorporated companies, under the Delaware False Claims Act . . . seeking treble damages and attorneys' fees and costs, for failure of the Delaware incorporated entities to escheat unredeemed gift cards issued by third-

3

party special purposes entities organized in other states." (D.I. 1 ¶ 53) (citing *State ex rel. French v. Card Compliant, LLC*, 2015 WL 11051006 (Del. Super. Ct. Nov. 23, 2015))

Plaintiffs filed their Complaint on July 18, 2016, shortly after receiving the email from Kelmar. In their Complaint, Plaintiffs allege that Defendants' actions and the DUPL are preempted by and in violation of federal common law and that Defendants' document requests constitute an unreasonable search in violation of the Fourth Amendment. (*See id.* ¶¶ 74, 88) Plaintiffs seek declaratory and injunctive relief.[2] (*See id.* ¶¶ 76, 89)

On February 2, 2017, the parties stipulated that Plaintiffs' Fourth Amendment claim would become moot if and when Delaware Senate Bill No. 13 was signed into law. (*See* D.I. 29 at 2) Senate Bill No. 13 was signed into law on the same day and was effective immediately. As such, "the only remaining claim is Plaintiffs' claim of federal preemption." (*Id.*)

### III.   LEGAL STANDARDS

#### A.   Failure to State a Claim Under Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all well-pleaded factual allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all

---

[2]Ten days after filing their complaint, the parties stipulated to a Standstill Agreement, "pursuant to which Defendants, pending a final order from th[e] Court, agreed not to pursue any further examination of . . . Plaintiffs' stored value gift card programs or to take any action against Plaintiffs for the escheat of unredeemed gift cards and/or gift certificates." (D.I. 23 at 1; *see also* D.I. 13 at 2)

well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). When evaluating a complaint, the Court may consider any documents or exhibits attached to or associated with the complaint. *See* Fed. R. Civ. P. 10(c); *see also Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

**B. Lack of Subject Matter Jurisdiction and Ripeness Under Rule 12(b)(1)**

In order for a federal court to exercise jurisdiction over a case, the case must be "ripe" for

5

review. *See Thompson v. Borough of Munhall*, 44 F. App'x 582, 583 (3d Cir. Aug. 13, 2002); *see also Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994); *Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 352 (D. Del. 2009) (explaining that challenge to ripeness is "facial challenge to subject matter jurisdiction"). The purpose of the ripeness doctrine "is to prevent the courts . . . from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).

Courts within the Third Circuit consider three factors when deciding whether an action is ripe for adjudication: "(1) the adversity of the parties' interests; (2) the probable conclusiveness of a judgment; and (3) the practical utility of judgment to the parties." *Evanston Ins. Co.*, 635 F. Supp. 2d at 352-53 (citing *Step-Saver Data Sys. Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (indicating that action for declaratory judgment is ripe if "the facts alleged . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). A case is not ripe unless all three factors are present. *See Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).

In order to establish adversity of interests, plaintiffs must show that they will suffer actual harm if they do not obtain relief. *See Step-Saver*, 912 F.2d at 647. This harm or threat of harm "must remain real and immediate throughout the course of the litigation." *Presbytery*, 40 F.3d at 1463 (internal quotation marks omitted). If the alleged harm involves "uncertain and contingent events," then the parties are not sufficiently adverse. *NE Hub Partners, L.P. v. CNG*

*Transmission Corp.*, 239 F.3d 333, 342 n.9 (3d Cir. 2001).

The question of conclusiveness hinges on whether the issues in dispute are "purely legal," or "whether further factual development would be useful." *Id.* "A declaratory judgment granted in the absence of a concrete set of facts would itself be a 'contingency,' and applying it to actual controversies which subsequently arise would be an exercise in futility." *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) (internal quotation marks omitted). However, "if a future event is certain to occur," then declaratory judgment is appropriate. *Travelers Ins. Co.*, 72 F.3d at 1155 (internal quotation marks omitted).

Finally, the question of the utility of a judgment hinges on whether a decision in the case would "be of some practical help to the parties." *Id.* In determining whether a decision would provide utility, courts consider the hardship the parties would experience in the absence of a decision. *See NE Hub*, 239 F.3d at 342.

When considering challenges to ripeness under Rule 12(b)(1), courts apply the same standards that are used to resolve a motion under Rule 12(b)(6). *See Evanston Ins. Co.*, 635 F. Supp. 2d at 352. This means that the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in favor of Plaintiffs. *See NE Hub*, 239 F.3d at 341. The Court's inquiry is limited to the allegations made in the Complaint, any attached documents, and matters of public record. *See Evanston Ins. Co.*, 635 F. Supp. 2d at 352.

**IV.    DISCUSSION**

Defendants' motion to dismiss presents two issues: ripeness and the sufficiency of Plaintiffs' preemption claim. As explained below, the Court agrees with Plaintiffs that the parties' disputes are ripe for resolution, but agrees with Defendants that the Complaint fails to

state plausible claims for preemption.

### A. Ripeness

In order for a claim to be ripe, Plaintiffs must stand to suffer an actual or imminent injury if their requested declaratory judgments are not granted. While the factors that go into a ripeness determination are well established, *see Step-Saver*, 912 F.2d at 647, "it is difficult to define the contours of the ripeness doctrine with precision," *id.* at 646. As a result, the Court's inquiry in each case depends on the specific facts alleged and the context in which the case is situated. *See id; see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("The difference between an abstract question and a 'controversy' . . . is necessarily one of degree. . . . [T]he question in each case is whether the facts alleged, **under all the circumstances**, show that there is a substantial controversy. . . ." (emphasis added)).

Viewed in context, under all the circumstances, the facts alleged in Plaintiffs' Complaint are sufficient to render the parties' disputes ripe for adjudication. The Court agrees with Plaintiffs that they are suffering a real harm due to Defendants' actions. All three of the requirements for a ripe dispute – adversity of the parties' interests, probable conclusiveness of a judgment, and utility of a judgment to the parties – are present here.

First, Plaintiffs are suffering real harms, and their interests are adverse to those of Defendants. Defendants have referred Plaintiffs' noncompliance with the audit to the Attorney General for an enforcement action and have "expressly threatened penalties" for Plaintiffs' noncompliance. (D.I. 24 at 9; *see also Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 148 (3d Cir. 2000) (explaining that threats of penalties can constitute injury); *cf. Pic-A-State Pa, Inc. v. Reno*, 76 F.3d 1294, 1299 (3d Cir. 1996) (holding that parties' interests were adverse

8

because "the Government . . . has not expressly disavowed an intent to prosecute")) Moreover, Plaintiffs' operations and businesses are implicated by Defendants' actions. (*See* D.I. 1 ¶¶ 66-67 ("The threat of injury is sufficient to disrupt Plaintiffs' operations and exposes Plaintiffs to penalties and interest. . . . [T]he threat of injury, including continually accruing penalties and interest, is enough to disrupt Plaintiffs' businesses."))

Important in understanding the reality of the adversity between the parties is the wider context in which their conflict arises. Plaintiffs' feud with Defendants is not an isolated incident. Many challenges to Delaware's escheat procedures have been moving through courts. This reality, and the outcomes of some of those cases, further support a conclusion that the case before the Court is ripe.

In *Temple-Inland, Inc. v. Cook*, another judge of this Court considered a case involving the same Defendants and what appears to be a similar, if not identical, audit process. *See* 2016 WL 3536710 (D. Del. June 28, 2016). In *Temple-Inland*, Judge Sleet held that Defendants violated a company's due process rights by waiting several years to conduct an audit, exploiting loopholes in the statute of limitations, providing improper notice to the plaintiffs, employing an unsound method of estimation, and subjecting the plaintiffs to multiple liability. *See id.* at *16 ("To put the matter gently, defendants have engaged in a game of 'gotcha' that shocks the conscience."). While the underlying facts here differ from those in *Temple-Inland*, Plaintiffs are involved in a process sufficiently similar to the one in which the *Temple-Inland* plaintiff found itself as to make Judge Sleet's findings – that aspects of Delaware's escheat regime are "troubling" and "shock the conscience," 2016 WL 3536710, at *9 – a pertinent circumstance this Court must consider in assessing whether Plaintiffs are faced with a "real and substantial threat

9

of harm." *NE Hub Partners*, 239 F.3d at 342 n.9.

Defendants contend that there is no real threat to Plaintiffs. Defendants assert that an audit does not give rise to adverse interests (*see* D.I. 23 at 6) and further that they are not able to assess penalties "for refusing to provide records when requested" (D.I. 26 at 4). These arguments ignore the real and detrimental effects of an enforcement action, the potential disruption of Plaintiffs' businesses, and the harm caused by the ongoing, and possibly unconstitutional, audit process. *See Sales Hydro Assocs. v. Maughan*, 985 F.2d 451, 453-54 (9th Cir. 1993) (explaining that burdensome process can constitute hardship sufficient for ripeness purposes). Plaintiffs adequately allege that the ongoing audit is imposing a hardship on them that can be remedied by a judicial declaration. *See Abbott Labs.*, 387 U.S. at 149 (noting factors that court should consider in evaluating ripeness, including "the fitness of the issues for judicial decision and the hardship to the parties of withholding court decision").

Plaintiffs' Complaint, which focuses on the audit process itself, also satisfies the "conclusiveness" prong of the ripeness inquiry. The question of conclusiveness hinges on whether the issues in dispute are purely legal, or whether further factual development would be useful. *See NE Hub*, 239 F.3d at 342 n.9. Plaintiffs' objections to Defendants' audit process *are* purely legal: Plaintiffs argue that Defendants' audit of non-Delaware entities is preempted by federal law. (*See* D.I. 1 ¶ 67 ("Plaintiffs' lawsuit . . . raises purely legal questions concerning federal preemption."); *see also NE Hub*, 239 F.3d at 344 ("[A] determination of whether there is preemption primarily raises a legal issue.")) If Plaintiffs' challenge were limited to the outcome of the audit, or to the inevitable escheatment of their property, then further factual development might be necessary. But that is not the claim Plaintiffs are pressing.

A decision in this case would be of substantial practical utility to the parties. If the Court concludes that Defendants' audit is preempted, then the audit will have to stop. In that event, Plaintiffs' activities that are presently the subject of the audit would be unencumbered and the uncertainty surrounding Plaintiffs' operations would disappear. If, on the other hand, the Court were to conclude that the audit is not preempted, then Plaintiffs' challenges to the process will have been resolved.

In sum, as the requirements for ripeness are satisfied, Plaintiffs' claims are ripe for review. The Court now proceeds to undertake that review.

**B.     Preemption**

Plaintiffs' Complaint alleges that Defendants' audit "is preempted by federal common law." (D.I. 1 ¶ 1) Specifically, Plaintiffs contend that the audit runs afoul of a trilogy of Supreme Court cases ("the *Texas* trilogy") that establish a series of "priority rules" that are used to disburse unclaimed or abandoned property to competing states. *See Delaware v. New York*, 507 U.S. 490, 500 (1993); *Pennsylvania v. New York*, 407 U.S. 206, 216 n.8 (1972); *Texas v. New Jersey*, 379 U.S. 674 (1965). Defendants argue that the *Texas* trilogy does not preempt their audit, or any eventual escheatment, because the cases apply only to disputes between two states, rather than to disputes between a private entity and a state. (*See* D.I. 23 at 12-13) Here, the dispute is between Plaintiffs, who are private entities, and the State of Delaware.

The Court agrees with Defendants, whose position has been endorsed by a decision of yet another judge of this Court. In an earlier phase of the *Temple-Inland* case, Judge Robinson explained:

> The court finds that, consistent with the stated purpose of the priority scheme in *Delaware* to "resolve disputes among States," the *Texas Cases* apply to disputes among States, not to disputes between private parties and States. . . . [S]uch a finding is in accord with a number of state court opinions addressing the applicability of the *Texas Cases*. Moreover, finding that the Supreme Court's holding in *Delaware* preempts the State's valid exercise of regulatory power over abandoned property would be contrary to the well-established principle that federal courts may not ordinarily displace state law.

*Temple-Inland, Inc. v. Cook*, 82 F. Supp. 3d 539, 549-50 (D. Del. 2015) (internal citations omitted).[3]

The Court agrees with the reasoning articulated in *Temple-Inland* and does not see any reason why this case calls for a different analysis.[4] Applying that reasoning here, it follows that Plaintiffs have failed to state a plausible preemption claim on which relief could be granted. Accordingly, the Court will grant Defendants' motion to dismiss Plaintiffs' preemption claims.

## V. CONCLUSION

For the reasons provided above, the Court will grant Defendants' motion to dismiss for failure to state a claim. An appropriate Order follows.

---

[3] The undersigned judge has previously indicated his agreement with Judge Robinson in a case quite analogous to the instant case. *See Marathon Petroleum Corp. v. Cook*, C.A. No. 16-80-LPS D.I. 39 (D. Del. Sept. 23, 2016).

[4] Plaintiffs rely on the Third Circuit's decision in *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 392 (3d Cir. 2012), in which the Court held that the *Texas* trilogy preempted New Jersey's attempt to override aspects of the priority scheme set out by the Supreme Court. (*See* D.I. 24 at 14-15) However, in that case, there were no allegations of evasion or fraud, whereas here Defendants suggest that their audit may uncover whether such "circumstances . . . are present in this case or whether other circumstances are present [that] could also give rise to potential liability under the [D]UPL." (D.I. 23 at 16) That New Jersey's hierarchy of priorities was found to be preempted does not compel a conclusion that Defendants' challenged conduct here is also preempted.